## J. H. KIMBALL, Respondent, v. ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY, Appellant.

### St. Louis Court of Appeals, March 3, 1903.

1. **Railroads: DAMAGES: PRESUMPTION: EVIDENCE.** An animal found dead on a railroad track, as an apparent result of a collision with an engine, is presumed, in the absence of explanatory evidence, to have gone on the track where found.

2. ———: ———: **EVIDENCE: DOUBLE DAMAGES.** But if the evidence shows where an animal got on the track, then whether the railroad company is liable for double damages depends not on where it was killed, but where it went on the railroad; that is, on whether it went on where the company was legally bound to maintain a lawful fence but failed to perform that duty, or at a point where it was not bound to fence, as at a public road crossing.

3. ———: ———: ———: **TESTIMONY.** In the case at bar, the presumption above mentioned does not arise, because there is no testimony on the question of where the respondent's cow went on the track, and the fact was to be found from the testimony bearing on it.

Appeal from Lawrence Circuit Court.—*Hon. H. C. Pepper,* Judge.

Affirmed.

*L. F. Parker* and *J. T. Woodruff* for appellant.

(1)   The evidence on the part of the plaintiff was not sufficient to support a verdict in his favor, and the court should have sustained the demurrer at the close of the evidence in his behalf.   There was no proof that the animal was struck within the right of way inclosure. All of the evidence showed that the carcass was found in the public road at the point where the same crossed the railroad, and other evidence tended to·prove that she was struck there, which being the case, raised the presumption that the animal went upon the track and was struck at the public road crossing.   Jantzen v. Railroad, 83 Mo. 171; McGuire v. Railroad, 23 Mo. App. 325; Pearson v. Railroad, 33 Mo. App. 543; Duke v. Railroad, 39 Mo. App. 106.   (2)   The positive and uncontradicted evidence of the engineer, the only eyewitness to the accident, was, that the animal went upon the track at and was struck upon the public road crossing.   This evidence was corroborated by the facts proven to the effect that there were cow tracks approaching the railroad at the point where the engineer claimed the cow was struck and that there were marks upon the ground at that point, indicating that the cow and the engine collided there.   There is also evidence that if the cow had been struck on the inside of the right of way and carried over the cattle guards through the wing fences, there would have been blood and hair on the fences.   This being the evidence and the same not having been contradicted by or inconsistent with any other evidence in the case, the court should not have submitted the case to the jury.   Railroad v. Gholson, 66 S. W. 1018; s. c., 24 Am. & Eng. R. R. Cases 677; Payne v. Railroad, 136 Mo. 594; Railroad v. Niedlinger, 110 Ga. 329; s. c., 35 S. E. 364.   (3)   "When testimony is actually conflicting, it is the exclusive province of the jury to determine as to its weight, and also as to the credibility of witnesses.   But when the

only testimony bearing affirmatively and directly upon the issue of fact involved is, without apparent reason, totally discredited and ignored by the jury, then it be-comes the duty of the court to set aside their verdict. In this case the testimony of the engineer is not merely uncontradicted, but the truthfulness of it is suscepti-ble of demonstration.'' (4) In the view of the pos-itive evidence of the engineer that the cow went upon and was struck at the crossing, which is corroborated by all of the physical facts as to the collision and not inconsistent with the evidence offered by the plaintiff, we can not see how the trial court's refusal to give an instruction in the nature of a demurrer at the close of all of the evidence, can be sustained. To uphold the ruling simply means this—that if the defendant in such circumstances offers no explanation of the occur-rence, the facts are to be found against it because it did not speak; if it does offer evidence as to how the accident occurred, and although such evidence is in every way trustworthy and corroborative of many other facts proven, and not at all inconsistent with the plain-tiff's evidence, yet it is not to be believed. We can not bring ourselves to believe that such a course will be up-held by this court, and we respectfully ask that the case be reversed and not remanded.

*Fielding P. Sizer* for respondent.

(1) Appellant's first assignment of error is the action of the trial judge in overruling its motion for a peremptory instruction to find for defendant, at the close of plaintiff's case. If there is any evidence it must go to the jury, who are exclusive judges of its weight and sufficiency. Chamberlain v. Smith, 1 Mo. 482; Speed v. Herrin, 4 Mo. 356; Robbins v. Ins. Co. 12 Mo. 380; Winston v. Wales, 13 Mo. 569. (2) Since appellant introduced testimony after its motion in the nature of a demurrer was overruled at close of plain-

Vol 99 app—22

tiff's case, the entire evidence will be reviewed by this court, and if appellant's testimony aided or supplied any defect in plaintiff's case, plaintiff was entitled to avail himself thereof and to stand upon it before the jury. Gallagher v. Edison, etc., Co., 72 Mo. App. 576; Bartley v. Trorlicht, 49 Mo. App. 214; Price v. Barnard, 65 Mo. App. 649; Eswin v. Railroad, 96 Mo. 293.

GOODE, J.—Action to recover double damages for the killing of respondent's cow by one of appellant's locomotives on August 9, 1900. The cow was pastured in a triangular field held by N. C. Davis as a leasehold, and the morning of the day she was killed was driven to the pasture by plaintiff's children where she was seen that morning by a witness named Leftwich, who later in the day saw her on the railroad right of way. The pasture contained about three acres of land, was bounded on the west and south by public wagon roads intersecting at right angles, the pasture being in the northeast angle of said wagon roads and inclosed on its northwest side by the appellant's right of way, which ran across both the wagon roads and around the pasture, subtending the angle formed by the intersection of the roads as the arc of a curve. The public roads were separated from the pasture by good fences and where the railroad cut those roads were good cattle guards with wing fences extending from them on either side to the right of way fences. The latter fences were made of wires and fastened to posts, and there is evidence in the record to prove that at one or more places between the two cattle guards some of the wires were broken loose and others sagged, so that an animal could get out of the field and on the right of way. As stated, the respondent's cow was in the pasture field the morning she was killed, and was afterwards observed grazing outside of it on the right of way between the two cattle guards which bounded the curved track at the north and south crossings of the

railroad and the two wagon roads. That she escaped from the field through a defective place in the fence was shown by her tracks being near such a place; and the tracks, and other indications of her presence, such as cropped grass, were traced from there southward along the right of way to within twenty feet of the south crossing where the public highway ran east and west. At that point the steps ended in a slight excavation of the earth, as though all her feet had been bunched and had dug up the soil. The cow's carcass was found on the south side of said east and west highway and west of the railroad track.

It is the contention of the respondent that the animal was struck at the spot where her tracks stopped and where the ground was torn up, twenty feet inside the cattle guards, and carried or hurled by the pilot of the locomotive through the cattle guard into the public road where she was found dead. The railway company contends, and the engineer whose engine killed the cow so swore, that she came on the track at the crossing of the east and west public road just as the train approached the crossing and barely had her forefeet over the west rail when the engine struck her.

The main issue of fact between the parties which the court submitted to the jury is, whether the cow went on the appellant's track at the time she was killed through the defective fence separating the right of way from the pasture, or whether she had previously gotten out of the pasture and into the public road and while grazing along the latter strayed on the railway track.

The circuit judge instructed the jury that if they found from the evidence the cow entered on the company's track at a point where it crosses the public road, the respondent could not recover; that the law presumed she came on the track where her body was found and it devolved on the respondent to show to the contrary by the weight of evidence.

The court further instructed that though the jury believed the cow passed out of the pasture through an opening in the fence on the company's right of way and before the approach of the train that killed her, then passed from the right of way to the public highway, and further believed that at the time she was struck by the engine she was in the act of going on the track where it crosses the public road, the verdict should be for the railroad company; a charge it seems to us too favorable to the appellant.

An instruction was given that the company must have known of the defective state of the fence where the cow left the pasture or had the opportunity to know of it by proper diligence.

An animal found dead on a railroad track as the apparent result of a collision with an engine, is presumed, in the absence of explanatory evidence, to have gone on the track where found. Pearson v. R. R. Co., 33 Mo. App. (K. C.) 543. But if the evidence shows where an animal got on the track, then whether the railroad company is liable for double damages depends not on where it was killed, but on where it went on the railroad; that is, on whether it went on where the company was legally bound to maintain a lawful fence but failed to perform that duty, or at a point where it was not bound to fence, as at a public road crossing. Fraysher v. Railroad, 66 Mo. App. (St. L.) 573; Ehret v. Railroad, 20 Mo. App. (K. C.) 251; Moore v. Railroad, 81 Mo. 499.

In the case in hand, the presumption above mentioned does not arise; because there is testimony on the question of where the respondent's cow went on the track and the fact was to be found from the testimony bearing on it.

None of the above propositions is gainsaid by the appellant, its position being that the only competent evidence on the issue of where the cow entered the track and was struck was the positive testimony of the engi-

neer that she came on at the highway crossing and the circumstance that her carcass lay in the public highway. But we think there was evidence for the jury to weigh that she entered the right of way through the defective fence between it and the pasture and was killed without having gone on the highway and while still grazing on the appellant's track inside the cattle guards. Leftwich saw her in there, she was traced by sundry signs from the opening in the fence to within twenty feet of the south cattle guard, there the ground looked like she had planted herself to receive a blow, and there the signs of her grazing stopped. It was certainly a circumstance of some force that her tracks went no further and could neither be traced forward nor backward from that point.

We are not able to yield assent to the charge of the lower court that the company was not liable if the cow escaped from the pasture through a defective place in the fence, wandered into the public road, afterwards entered the railroad track at the crossing and was there killed. That proposition seems not to be sound law. Snider v. Railroad, 73 Mo. 465; Worden v. Railroad, 78 Mo. App. (K. C.) 664. If the cow got out of the field through a broken place in the fence, of which there is proof the section foreman had notice, we think the company is responsible in double damages for killing her even though she passed to the public road from the right of way first, and thence to the crossing.

The judgment is affirmed. *Bland, P. J.,* and *Reyburn, J.,* concur.